HG: USAO#2021R00199

```
                                              FILED _____  ENTERED
                                              LOGGED _____ RECEIVED

                                              MAY 17 2022
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. PWG-22-073 |
| | : | |
| v. | : | (Conspiracy To Commit Wire Fraud, |
| | : | 18 U.S.C. § 1349; Wire Fraud, 18 U.S.C. |
| JALEEL PHILLIPS, and | : | § 1343; Aggravated Identity Theft, 18 U.S.C. § |
| | : | 1028A; Transactions In Criminally Derived |
| JERRY PHILLIPS, | : | Property, 18 U.S.C. § 1957; Possession Of A |
| | : | Machine Gun, 18 U.S.C. § 922(o); Forfeiture, |
| a/k/a "TIAN JUZO," | : | 18 U.S.C. § 981(a)(1)(C), 982(a), |
| | : | 21 U.S.C. § 853; 28 U.S.C. § 2461(c)) |
| Defendants. | : | |
| | : | |
| | : | |

...oOo...

## SUPERSEDING INDICTMENT

## COUNT ONE – CONSPIRACY TO COMMIT WIRE FRAUD

The Grand Jury for the District of Maryland charges:

### INTRODUCTION

At times material to this Superseding Indictment:

1. **Defendants JALEEL PHILLIPS and JERRY PHILLIPS, a/k/a "TIAN JUZO," (collectively the "PHILLIPS BROTHERS")** lived in Temple Hills, Maryland and Capitol Heights, Maryland.

2. Celtic Bank Corporation ("Celtic Bank"), Citibank ("Citi"), PNC Bank ("PNC"), and Wells Fargo Bank, N.A. ("Wells Fargo") were financial institutions as defined in 18 U.S.C. § 20. All of these entities are hereinafter collectively referred to as the "Financial Institutions."

1

3. The Financial Institutions maintained records concerning financial transactions in their accounts, including but not limited to records about the individuals controlling the accounts, and in some instances, surveillance video and/or images, and information about the identification documents used to open an account.

4. Financial institutions throughout the United States used a nine-digit number, called a routing number, along with a bank account number, to determine the particular financial institution and account that should receive funds from a wire transfer. Similarly, financial institutions placed the routing number and account number on checks so a receiving bank could draw on the funds and the account from which the check was issued.

5. Telegram Messenger LLP ("Telegram") was a company that controlled an encrypted online platform called Telegram, which allowed users to send text and voice messages, communicate via voice and video calls, and share images, documents, user locations, and other media. Users provided a cellular mobile number when registering with the service.

6. Zelle was a digital payments network owned by multiple financial institutions in the United States. Zelle allowed users to electronically transfer money from their bank account to another registered user's bank account within the United States through a mobile device or online banking system.

7. Robinhood Markets, Inc. ("Robinhood") was a financial services company that allowed customers to engage in commission-free trading of stocks, exchange-traded funds (ETFs), and cryptocurrencies.

8. The Home Depot, Inc. ("Home Depot") was a home improvement retailer that supplied tools, construction materials, appliances, and services.

2

9. Carvana Co. ("Carvana") was an online used car dealer that allowed customers to purchase a vehicle through the internet and pick up the vehicle from its multi-story car vending machines or arrange for delivery of the vehicle to a customer's residence.

10. Person #1 was a resident of Mississippi.

11. Identity Victims #1, #2, #3, #4, #5, and #6, were real persons living in Virginia, Alaska, California, Massachusetts, Connecticut, and Iowa, respectively.

The Paycheck Protection Program

12. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering from the economic consequences of COVID-19.

13. The CARES Act authorized forgivable loans to small businesses for employee retention and certain business expenses through a program called the Paycheck Protection Program ("PPP"). The PPP authorized qualifying small businesses and other organizations to receive loans guaranteed by the SBA. Each recipient business was required to use PPP loan proceeds on payroll costs, mortgage interest, rent, and utilities. Loan forgiveness of the PPP loan principal was possible if the loans were spent on qualifying expenses.

14. In order to calculate the amount of PPP funding, the SBA used a loan recipient's number of employees and average monthly payroll costs for the 12-month period prior to the disaster.

Economic Injury Disaster Loan

15.     An Economic Injury Disaster Loan ("EIDL") was an SBA-administered loan designed for a small business suffering substantial economic injury due to a declared disaster. It was designed so businesses could meet necessary financial obligations. The amount of the loan offered as well as the advance amount were determined by the SBA based on the information provided on the loan application. In or about March 2020, the SBA declared a disaster due to COVID-19, thus making EIDL loans available nationwide.

16.     EIDL funds were issued by the United States, and applicants applied for benefits through the SBA via an online portal. The EIDL application process collected information concerning the business and the business owner, including information as to the gross revenues for the 12 months prior to the disaster; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certified that the information provided was accurate and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

Unemployment Insurance

17.     Unemployment insurance ("UI") was a state-federal program that provided monetary benefits to eligible workers. Although states administered their respective UI programs, they did so in accordance with federal laws and regulations. Generally, UI benefits were paid weekly based on a percentage of wages earned over a time period.

18.     After states determined that a person was eligible for benefits, payments were often made by either (a) direct deposit to a financial institution account or (b) by crediting the benefits to a financial account that was linked to a prepaid debit card. The beneficiary could then

use the prepaid debit card to withdraw cash at ATMs or pay for goods and services in point-of-sale transactions.

19. The CARES Act expanded states' ability to provide UI benefits for many workers impacted by COVID-19, including workers who would normally not be eligible for UI benefits.

## THE CONSPIRACY AND ITS OBJECTS

20. Beginning in or about March 2020, and continuing until on or about February 16, 2022, in the District of Maryland and elsewhere,

**JALEEL PHILLIPS, and**

**JERRY PHILLIPS,**
a/k/a "TIAN JUZO,"

the defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other, and with persons known and unknown to the Grand Jury, to knowingly and willfully devise and intend to devise a scheme and artifice to defraud the United States, multiple financial institutions, and multiple states, including California, Arizona, Michigan, and Massachusetts, to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## METHODS AND MEANS

21. It was part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** opened, controlled, and accessed multiple accounts at the Financial Institutions that were listed in names other than their own.

5

22. It was further part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** used fake, fraudulent and fictitious identities, including but not limited to Kenneth Williams, David Wyatt, Jamal Hopkins, Lawrence Robinson, Eric Jones, Tomi Bradley, Allen Gator, Derek Parker, and Jordan Gilmoore, thereby hiding the identities of the **PHILLIPS BROTHERS** and frustrating the efforts of multiple financial institutions and law enforcement to identify and investigate the conspiracy and scheme to defraud.

23. It was part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** used defunct corporate entities and created and used business entities with no actual business operations, for the purpose of applying for COVID-19 related benefits, such as PPP and EIDL.

24. It was further part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** created and used email accounts associated with alias identities.

25. It was further part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** used IP addresses associated with their residence, including 96.241.193.39 and 173.73.217.89, when applying for PPP, EIDL, and unemployment insurance benefits.

26. It was further part of the conspiracy and scheme to defraud that, when the **PHILLIPS BROTHERS** applied for PPP, EIDL, and unemployment insurance benefits, the **PHILLIPS BROTHERS** caused interstate wire communications, including from Maryland to other states.

27. It was further part of the conspiracy and scheme to defraud that, in order to obtain PPP benefits, the **PHILLIPS BROTHERS** made and caused to be made materially false and fraudulent pretenses, representations, and promises to the Financial Institutions and the United

6

States, including false representations regarding the average monthly payroll and employees of purported businesses, as well as the owners of those alleged businesses.

28. It was further part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** made and caused to be made materially false and fraudulent pretenses, representations, and promises in order to obtain EIDLs, including falsely representing the gross revenues and employees of purported businesses, as well as the owners of those alleged businesses.

29. It was further part of the conspiracy and scheme to defraud that, in order to obtain unemployment insurance benefits, the **PHILLIPS BROTHERS** made and caused to be made materially false and fraudulent pretenses, representations, and promises, including false representations as to an applicant's identity, employment status, and eligibility for benefits.

30. It was further part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** used the personal identifying information of multiple real persons, including Identity Victims #1, #2, #3, #4, #5, and #6, when applying for unemployment benefits.

31. It was further part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** engaged and attempted to engage in financial transactions in accounts at the Financial Institutions that received fraudulent PPP, EIDL, and unemployment insurance benefits.

32. It was further part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** transferred money via Zelle, point-of-sale transactions, ATM withdrawals, and other financial transactions that caused interstate wire communications, including wires that began and ended in Maryland.

7

33. It was further part of the conspiracy and scheme to defraud that **JERRY PHILLIPS, a/k/a TIAN JUZO** communicated with Person #1 using Telegram.

34. It was further part of the conspiracy and scheme to defraud that **JERRY PHILLIPS, a/k/a TIAN JUZO**, sent messages via Telegram about applying for PPP, EIDL and unemployment insurance benefits.

35. It was further part of the conspiracy and scheme to defraud that the **PHILLIPS BROTHERS** obtained and attempted to obtain more than $500,000 in the aggregate through materially false and fraudulent pretenses, representations, and promises in PPP, EIDL, and unemployment related benefit applications.

18 U.S.C. § 1349

## COUNTS TWO THROUGH FIFTEEN – WIRE FRAUD

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 – 19 and 21 – 35 of Count One of this Superseding Indictment are incorporated here by reference.

2. Beginning in or about March 2020, and continuing until on or about February 16, 2022, in the District of Maryland and elsewhere,

**JALEEL PHILLIPS, and
JERRY PHILLIPS,**

the defendants herein, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud the United States, multiple financial institutions, and multiple states, including California, Arizona, Michigan, and Massachusetts, to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## THE CHARGES

3. On or about the dates set forth below, in the District of Maryland and elsewhere,

**JALEEL PHILLIPS, and
JERRY PHILLIPS,**

the defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly and willfully transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, as set forth below:

| COUNT | DATE | DESCRIPTION | INTERSTATE WIRE COMMUNICATION DETAILS |
|---|---|---|---|
| 2 | 5/11/2020 | Application for EIDL benefits on behalf of Wyatt's Family Farm | From Maryland to a location outside Maryland |
| 3 | 5/14/2020 | Application for unemployment benefits from Massachusetts in the name of Jamal Hopkins | From Maryland to a location outside Maryland |
| 4 | 5/16/2020 | Application for unemployment benefits from Massachusetts in the name of Kenneth Williams | From Maryland to a location outside Maryland |
| 5 | 5/16/2020 | Application for unemployment benefits from Massachusetts in the name of Identity Victim #1 | From Maryland to a location outside Maryland |
| 6 | 5/17/2020 | Application for unemployment benefits from Massachusetts in the name of Identity Victim #2 | From Maryland to a location outside Maryland |
| 7 | 5/19/2020 | Application for unemployment benefits from Massachusetts in the name of Identity Victim #4 | To Colorado from a location outside Colorado |
| 8 | 5/19/2020 | Application for unemployment benefits from Massachusetts in the name of Identity Victim #6 | To Colorado from a location outside Colorado |
| 9 | 5/30/2020 | Application for PPP benefits to Celtic Bank on behalf of Agroimpex, Inc., using the alias Jamal Hopkins | From Maryland to a location outside Maryland |
| 10 | 6/15/2020 | Application for EIDL benefits on behalf of Cultivations, Inc. | From Maryland to a location outside Maryland |
| 11 | 6/20/2020 | Purchase at Home Depot in Oxon Hill, Maryland, using the Allen Gator alias | From Maryland to a location outside Maryland |
| 12 | 6/30/2020 | Purchases at Home Depot in Oxon Hill, Maryland, using the Allen Gator and Tomi Bradley aliases | From Maryland to a location outside Maryland |
| 13 | 7/1/2020 | Purchase at Home Depot in Oxon Hill, Maryland, using the Allen Gator alias | From Maryland to a location outside Maryland |
| 14 | 7/3/2020 | Purchase at Home Depot in Oxon Hill, Maryland, using the Allen Gator alias | From Maryland to a location outside Maryland |

| 15 | 9/2/2021 | Online Purchase from Home Depot, using the Eric Jones alias | From Maryland to a location outside Maryland |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS SIXTEEN THROUGH SEVENTEEN – TRANSACTIONS IN CRIMINALLY DERIVED PROPERTY

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 19 of Count One of this Superseding Indictment are incorporated here by reference.

2. On or about the dates listed below, in the District of Maryland and elsewhere, the defendant listed below, did knowingly engage, and attempt to engage, in the monetary transactions described below, by through and to a financial institution, affecting interstate commerce, in criminally derived property having a value greater than $10,000, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343.

| COUNT | DATE | DEFENDANT | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|---|
| 16 | 6/8/2020 | **JERRY PHILLIPS** | Transfer And Exchange Of $65,538.96 To Carvana, For The Purchase Of A 2020 Chevrolet Camaro |
| 17 | 6/10/2020 | **JERRY PHILLIPS** | Transfer and Exchange of More Than $10,000 to a Robinhood Account ending in 3792, in the name **KENNETH WILLIAMS** |

18 U.S.C. § 1957
18 U.S.C. § 2

12

## COUNTS EIGHTEEN THROUGH TWENTY-ONE
## AGGRAVATED IDENTITY THEFT

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 19 of Count One of this Superseding Indictment are incorporated here by reference.

2. On or about the dates listed below, in the District of Maryland and elsewhere,

**JERRY PHILLIPS,**

the defendant herein, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another real person, to wit, the personal identifying information of the individuals listed below, including their names, dates of birth, and social security numbers, during and in relation to (a) Conspiracy To Commit Wire Fraud, in violation of 18 U.S.C. § 1349, as alleged in Count One and (b) Wire Fraud, in violation of 18 U.S.C. § 1343, as alleged in the Counts of the Superseding Indictment listed below:

| COUNT | DATE | DESCRIPTION | Wire Fraud Count |
|---|---|---|---|
| 18 | 5/17/2020 | Application for Massachusetts unemployment benefits using the name, date of birth, and social security number of Identity Victim #1, a Virginia resident. | 5 |
| 19 | 5/17/2020 | Application for Massachusetts unemployment benefits using the name, date of birth, and social security number of Identity Victim #2, an Alaska resident. | 6 |
| 20 | 5/19/2020 | Application for Massachusetts unemployment benefits using the name, date of birth, and social security number of Identity Victim #4, a Massachusetts resident. | 7 |
| 21 | 5/19/2020 | Application for Massachusetts unemployment benefits using the name, date of birth, and social security number of Identity Victim #6, an Iowa resident. | 8 |

18 U.S.C. § 1028A(a)(1), (c)
18 U.S.C. § 2

## COUNT TWENTY-TWO – POSSESSION OF A MACHINE GUN

The Grand Jury for the District of Maryland further charges that:

On or about February 16, 2022, in the District of Maryland, the defendant herein,

### JERRY PHILLIPS,

did knowingly possess a machine gun, that is, a privately manufactured Glock-type firearm with no serial number, which contained a machine gun-conversion device.

18 U.S.C. § 922(o)
18 U.S.C. § 924(a)(2)
26 U.S.C. § 5845
18 U.S.C. § 2

## FORFEITURE

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 924(d), 981(a)(1)(C) and 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendants' convictions on any of the offenses charged in Counts One through Seventeen or Twenty-Two of this Superseding Indictment.

### Wire Fraud Forfeiture

2. Upon conviction of any of the offenses set forth in Counts One through Fifteen of this Superseding Indictment,

**JALEEL PHILLIPS, and
JERRY PHILLIPS,
a/k/a "TIAN JUZO,"**

the defendants herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses and pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of the offenses.

### Forfeiture For Transactions In Criminally Derived Property

3. Upon conviction of any of the offenses set forth in Counts Sixteen and Seventeen of this Superseding Indictment,

**JERRY PHILLIPS,**

the defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the offense, or any property traceable to such property.

16

### Firearms Forfeiture

4.    Upon conviction of the offense set forth in Count Twenty-Two of this Superseding Indictment,

**JERRY PHILLIPS,**

the defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearm or ammunition involved in or used in the commission of the offense.

### Property Subject to Forfeiture

5.    The property to be forfeited includes, but is not limited to, the following:

(a)    a privately manufactured Glock-type firearm with no serial number, which contained a machine gun-conversion device; and

(b)    a forfeiture money judgment.

### Substitute Assets

5.    If, as a result of any act or omission of the defendant, any such property subject to forfeiture,

(a)    cannot be located upon the exercise of diligence;

(b)    has been transferred, or sold to, or deposited with a third person;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be subdivided without difficulty;

17

the United States, pursuant to pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c), shall be entitled to forfeiture of substitute property up to the value of the forfeitable property.

18 U.S.C. § 924(d)
18 U.S.C. §§ 981(a)(1)(C), 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*signature*
EREK L. BARRON
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**　　Date: 5/17/2022
Foreperson